# In the United States District Court for the District of Colorado
# Judge Daniel D. Domenico

Case No. 1:20-cv-00274-DDD-SKC

**Melinda Eckard**,

    Plaintiff,

v.

**State Farm Mutual Automobile Insurance Company**,

    Defendants.

## Order Granting Motion for Summary Judgment

Plaintiff Melinda Eckard brought this case seeking underinsured-motorist benefits against Defendant State Farm Automobile Insurance Company. State Farm moves for summary judgment (Doc. 25), arguing that Ms. Eckard's claim for benefits is untimely. Because this case invokes the Court's diversity jurisdiction, Colorado law governs the timeliness question, and the relevant Colorado law provides that any claim like Ms. Eckard's must be brought within "two years after the insured received payment of the settlement or judgment on the underlying bodily injury liability claim." Colo. Rev. Stat. § 13-80-107.5(1)(b).

This case was filed on October 29, 2019. State Farm argues this was too late because the undisputed evidence is that Ms. Eckard's attorneys received a check as payment to settle the underlying claim more than two years earlier, on October 11, 2017. But Ms. Eckard points out that while the check was received that day, she did not actually accept it as settlement and endorse it until November of that year—within the

statute's two-year limit. Because the Court concludes that the Supreme Court of Colorado would agree with State Farm that the statute is triggered by the receipt of a settlement payment, even if the settlement has not yet been consummated, the motion is granted.

## BACKGROUND

Because the case is before the Court on State Farm's motion for summary judgment, the Court views the factual record and the reasonable inferences it supports in the light most favorable to Ms. Eckard. *See MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1189–90 (10th Cir. 2009). So viewed, the record reveals a straightforward timeline to determine how the two-year limitations period in § 13-80-107.5(1)(b) comes into play in this case.

Ms. Eckard was involved in an accident with another driver, Jonathan Grzelak, on March 12, 2016. Ms. Eckard had an under-insured-motorist insurance policy with State Farm at the time, and she filed a claim on the policy after the accident. Mr. Grzelak was insured by Permanent General Assurance Corporation, and on October 4, 2017 Permanent offered Mr. Grzelak's policy limit, $25,000, to settle the claims she might have had against him. The offer was made in the form of a $25,000 check, which along with a proposed settlement agreement was received by Ms. Eckard's lawyer's paralegal on October 11, 2017. On November 7, 2017, Ms. Eckard and her husband signed a settlement agreement with Permanent and endorsed the check for deposit. Ms. Eckard filed this suit on October 29, 2019.

## ANALYSIS

The dispositive question is whether Ms. Eckard "received payment of the settlement" on October 11, when Permanent's check was received by

2

her attorneys, or on November 7, when she signed the settlement agreement and endorsed the check. As a matter of how a reasonable reader of ordinary intelligence would understand the word "receive"—the prevailing method of the interpretation of legal texts dating to the founding, *Ogden v. Saunders*, 25 U.S. 213, 332 (1827) (opinion of Marshall, C.J.) (explaining "that [a legal text's] words are to be understood in that sense in which they are generally used by those for whom the instrument was intended"); *see also United States v. Rabinowitz*, 339 U.S. 56, 70 (1950) (Frankfurter, J., dissenting) ("Words must be read with the gloss of the experience of those who framed them.")—the Court would have no trouble concluding that the former is correct.

State Farm's position that the statute of limitations started on October 11 is consistent with the plain meaning of the terms in the statute. To "receive" is "to take into one's possession (something given, offered, sent, etc.); to get; accept; acquire," Webster's Second New International Dictionary 1504 (1977), and "payment" means "'performance of an obligation,' which occurs 'by the delivery of money or some other valuable thing accepted in partial or full discharge of the obligation,'" *Stoesz v. State Farm Mutual Automobile Insurance Company*, 410 P.3d 583, 586 (Colo. App. 2015) (quoting *Black's Law Dictionary* 1243 (9th ed. 2009)). There is no real dispute that (1) the check from Permanent was payment of the proposed settlement of the underlying claim; (2) received by Ms. Eckard's agents on October 11, 2017. Since the statute is triggered by the receipt of the payment, that is the relevant date.

3

Ms. Eckard points out that the facts are more complicated than State Farm's original motion contended.[1] For a variety of reasons—among them, the need for State Farm to approve the settlement with Mr. Grzelak's insurer—Ms. Eckard didn't authorize the settlement agreement or endorse the check until November 7. (*See* Doc. 28 at 2–5.) Since there was no settlement before November, she argues, the check was not "payment of the settlement" until then. The problem is that the statute does not turn on the date of the settlement, or the date the payment is accepted. It turns on the date the *payment* is *received*. And while it was perhaps not quite payment of the settlement when received, all agree that State Farm's check was, in fact, payment of the settlement. If not, what was it payment for? That she did not accept it until later, or agree to the settlement, are not material facts under the language of the Colorado statute.

This straightforward bit of statutory interpretation is complicated somewhat by the fact, noted above, that this is a diversity-jurisdiction case. And a federal court in such cases is required to "conform to [Colorado]'s substantive law." *Stauth v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 236 F.3d 1260, 1267 (10th Cir. 2001). Where, as here, "no decision of a state's highest court has addressed an issue of that state's law," the federal court "must predict how the State's highest court would rule." *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1228 (10th Cir. 2001). In doing so, the Court is "free to consider all resources available, including decisions of [Colorado] courts and the general trend of

---

[1] State Farm points out that Ms. Eckard disclosed new information in her response brief about when she endorsed the check. This information, according to State Farm, had not been disclosed to date in discovery. That said, State Farm acknowledges that the new information must be accepted as true for purposes of its motion.

4

authority." *Pehle v. Farm Bureau Life Ins. Co.*, 397 F.3d 897, 901–02 (10th Cir. 2005) (quotation marks omitted).

In this case, that process leads to the same conclusion. Colorado's Supreme Court repeatedly has emphasized that absent genuine ambiguity, the Supreme Court of Colorado requires lower courts to enforce the terms of a statute according to their plain and ordinary meaning. *Hernandez v. People*, 176 P.3d 746, 751 (Colo. 2008). Only if the text of a statute is ambiguous or unclear may a court go beyond that text to try to divine and put into effect its understanding of the intent of the legislature. *Id.* For the reasons explained above, the text in question here is not ambiguous, and so this Court predicts that by applying Colorado's well-worn rules of interpretation, the Colorado Supreme Court would hold that the date the payment was received in this case was October 11, 2017.

Ms. Eckard points to two decisions that support her interpretation, one from the state appeals court, and one from this District: *Kovac v. Farmers Insurance Exchange*, 401 P.3d 112 (Colo. App. 2017), and *Westby v. State Farm Mutual Automobile Insurance Company*, 2016 WL 471357 (D. Colo. 2016). *Kovac* held that to trigger § 13-80-107.5(1)(b)'s two-year limitations period, a written settlement agreement between the injured motorist and the at-fault, underinsured motorist must be executed. 404 P.3d at 116. *Westby* likewise adopted the view that § 13-80-107.5(1)(b) is only triggered when the injured motorist executes the settlement agreement because that is the date on which the injured motorist is entitled payment. 2016 WL 471357 at *6.

The Court respectfully declines to follow these decisions, because they put policy concerns before the plain text of the statute. *See Aetna Cas. & Sur. Co. v. McMichael*, 906 P.2d 92, 97 (Colo. 1995) (policy

5

concerns cannot vary the plain and ordinary meaning of an unambiguous statute); *Martinez v. People*, 455 P.3d 752, 755 (Colo. 2020) (same). While their conclusion has some appeal as a policy matter,[2] and it seems possible that the legislature did not envision a situation like this when drafting the provision, those considerations don't change the reality that the statutory language turns on the timing of *receipt* of the ultimate payment, not the timing of the settlement. Ms. Eckard does not deny that the check was State Farm's payment of the underlying settlement, and that she received that payment on October 11, 2017. Those two facts are all that is required to start the two-year clock under the statute as actually written.

If the legislature meant to start the clock for claims for under-insured motorist benefits after execution of a settlement agreement, it could have said that. But instead, it tied the clock to *receipt* of payment—regardless of whether the agreement had yet been executed. Because Ms. Eckard received payment more than two years before filing this suit, her claim is barred by the statute of limitation.

---

[2] Although, as State Farm points out, there are some potentially countervailing policy reasons of its own—mainly that the contrary rule can make what should be a simple calculation turn on nuanced concepts of "acceptance" and that allows plaintiffs to manipulate the running of the statute. In any event, these sorts of policy disputes highlight why this Court is better situated to simply apply the text of the statute and allow the Colorado legislature to fix any unintended or unwanted consequences of the language as currently written.

The Court **grants** State Farm's motion for summary judgment. (Doc. 25.) The clerk is directed to enter judgment in favor of State Farm and close the case.

DATED: June 30, 2021. BY THE COURT:

_____
Daniel D. Domenico
United States District Judge